## WOODBURN v. INDUSTRIAL COMMISSION et al.

No. 7008. Decided May 23, 1947. (181 P. 2d 209.)

See 71 C. J., Workmen's Compensation Acts, Sec. 1267; Evidence of disease attributable to employment, note, 73 A. L. R. 511. See, also, 3 Am. Jur. 445.

*Joseph E. Evans*, of Ogden, for appellant.

*Howell, Stine & Devine,* of Ogden, and *Grover A. Giles,* Atty. Gen., for respondent.

WOLFE, Justice.

Certiorari to review an order of the Industrial Commission denying compensation to the plaintiff.

The facts out of which the controversy arose are as follows: The plaintiff testified without contradiction that he was 55 years of age, was by occupation a structural iron worker and rigger, but for several years before the incident involved in this case his work had been largely that of supervising. As a supervisor he had little occasion to engage in heavy manual work nor had he worked at high altitudes. He was employed on July 16, 1945, by the defendant Ora Bundy Company as superintendent of construction on the ski-lift construction job at Snow Basin, near Ogden, Utah.

The plaintiff further testified that on July 21, 1945, in the course of his employment, he rode on a tractor up to a point representing the upper terminal of the proposed ski-lift. He then descended the mountain on foot, following the proposed line of the lift until he reached the lower terminal. As he descended he located the surveying pegs which marked the course. He chopped away the weeds that had grown over the pegs. The weather was extremely hot and there was neither shade nor a breeze to assuage the heat. On his descent he perspired profusely and became very thirsty. When he got to the lower terminal, he was weak and stiff and felt a soreness around his left breast and under his armpit.

The upper terminal of the lift is 8040 feet above sea level; the lower terminal 6540 feet above sea level, and the distance on the ground between the two terminals is from 4600 to 4800 feet.

From July 21st, the date of the above described event, until July 31st the plaintiff did little work of a strenuous nature, but merely supervised operations from the lower level. This was for the reason that his climb on the 21st

had made him so stiff and sore that he felt disinclined to exert himself.

On July 31st he arrived at work at about 8:30 a. m. He climbed the hill from the lower terminal to the "parking area." The ground distance between those two places is approximately 900 feet. The parking area is 30 feet higher than the lower terminal. He stayed at the parking area for about 40 minutes and then walked back to the lower terminal. He then proceeded to climb on foot from the lower terminal up to tower No. 4. The horizontal distance from the lower terminal to tower No. 4 is 1140 feet, and the vertical distance is 215 feet. He stayed at tower No. 4 for a few minutes then descended on foot to the lower terminal. The ground between the lower terminal and tower No. 4 was not marked by a trail or path and was covered with weeds and brush. On his way up plaintiff perspired profusely and became very fatigued. There is some evidence, which will be discussed hereinafter, that he suffered pain in his chest on the way up. The entire trip up and down took about half an hour.

From the lower terminal he proceeded directly to the parking area. Upon his arrival there he, desiring to get some papers from his brief case, sat down on a log, put on his glasses, took the papers from the case and handed them to one of the workmen. Immediately thereafter he was seized by a severe pain under the breastbone. The pain was intense and tended to increase rather than to diminish. It radiated across his upper chest. He was taken to his home where he remained in a semi-conscious state until that evening when Dr. Strandquist examined him. The attack came upon the plaintiff at approximately 10:30 a. m. The interval between the time he sat down on the log and the time the pain hit him did not exceed two minutes.

A hearing was held by the Industrial Commission of Utah on January 8, 1946, to determine whether the attack constituted an accident arising out of or in the course of the plaintiff's employment. The Commission decided that the plaintiff was totally disabled as a result of a coronary oc-

clusion suffered as a result of extreme physical exertion on July 31, 1945, and awarded compensation to him.

On February 23, 1946, upon the application of the defendant Ora Bundy Company and the insurance carrier, the Industrial Commission granted a rehearing which was held on April 24, 1946.

The medical testimony before the Commission was supplied by four doctors. All agreed that plaintiff suffered an attack of either coronary occlusion or coronary thrombosis. Doctors Stranquist, Olson and Zeman testified that in their opinion physical exertion *could* constitute a contributing factor in coronary occlusion or thrombosis. The fourth medical expert, Dr. Walker, testified that there is no causal connection between physical exertion and coronary occlusion or thrombosis and that strenuous exercise does not cause such conditions. Dr. Stranquist was of the opinion that the physical exercise the plaintiff underwent on his job on the 31st of July *did* contribute to the attack. Dr. Zeman went no further than to testify that "there is a very good possibility" that it contributed. As Dr. Walker did not think there is any connection between such conditions and physical exertion, he testified that plaintiff's condition was in *no way caused* by the physical exertion on his job. Dr. Olson was of the opinion that the physical exercise *did not* conribute to the plaintiff's condition though he indicated that if plaintiff had suffered pain under the breastbone co-incidental with the physical exertion there probably would be a causal connection between the exertion and the injury.

Dr. Olson's opinion on the causual connection between the plaintiff's exertion and the injury is dependent on whether or not pain indicative of the condition was suffered by him during the exertion. It therefore becomes important to examine the evidence as to whether or not the plaintiff suffered such pain on his hike to tower No. 4 on July 31st. That evidence is as follows:

At the first hearing, in answer to the leading question by his counsel, "Is that where you noticed your heart pain?" the plaintiff testified that when he arrived at tower No.

3 on the way up he put his hand on his chest "and it seemed like it was a little relief from the pain."

Dr. Strandquist was asked:

"I believe your original history from Mr. Woodburn indicated he suffered this pain while he was in the act of exerting himself climbing?"

The doctor answered:

"That evening after office hours I was in a hurry and they phoned for me and I didn't go into his history very close until afterwards he did tell me he was sitting down when this happened. But at the time I was under the impression he got it climbing. But later on he did tell me it came on while he was sitting down."

Dr. Olson testified that when he examined the plaintiff some forty days after the heart attack he was very interested in the question of pain prior to the attack. He testified that the plaintiff did not mention having pain on the hike to No. 4 on the day of the attack.

At the rehearing additional testimony as to pain on the hike to Tower No. 4 was given as follows:

The plaintiff testified in reference to the climb:

"It was a hot day and the overexertion made my heart so it kept pounding. I put my right hand over my heart and it gave me some relief.

And as to what happened after he returned from the hike and just prior to the attack:

"After I gave Archibald [the carpenter] the first length on the first pole, and he called for the second one, and my heart was pounding, and there was sort of a fluttering here under my breastbone. But so far as severe pain there was no severe pain until after I got down. It may have been two minutes. Just long enough to reach my hand in the brief case and pull out that piece of paper to read the elevation, and Archibald, he called for the second, and then the pain hit me under the breastbone."

Dr. Strandquist, when asked if plaintiff told him of anything unusual happening on his climb on July 31st answered:

"I don't recall whether he said the pain came on while he was climbing or after he came back and sat down." "I think he said it came after when he sat down, as he testified here."

Dr. Olson was asked:

"At that time [Sept. 10, 1945, when Dr. Olson examined the plaintiff] did he tell you that he suffered any pain while he was going up the hill to this tower, this number four tower?"

The doctor answered:

"He denied that he did suffer any pain."

Question:

"When did he say he was first attacked with pain?"

Answer:

"When he was sitting on a bench or something talking to a carpenter."

The conclusion that plaintiff on his hike to tower No. 4 on July 31st did not suffer pain related to his subsequent heart attack would be amply supported by the above evidence. It will be noted that the Commission in its decision which is quoted hereinafter on the rehearing did not expressly make a finding on the question of whether or not plaintiff suffered pain related to the heart attack on his hike to tower No. 4 on the 31st of July. However, by its acceptance of the testimony of Dr. Olson as authority for finding no causal connection between the exertion and the injury the Commission by implication found that the plaintiff did not suffer such pain co-incidental with his exertion.

On the basis of the evidence introduced at the rehearing the Commission reversed its previous position and found:

"So far as medical testimony is concerned, we choose to accept the testimony of Doctors J. G. Olson and William C. Walker, heart specialists, and the documentary medical testimony presented by defendants. Furthermore, we are convinced that such exertion as applicant may have undergone in the course of his employment on July 31, 1945, was not sufficient to precipitate the coronary occlusion.

"The Commission therefore finds and concludes that the coronary occlusion which applicant sustained on July 31, 1945, was not caused by an accident arising out of or in the course of applicant's employment by defendant as alleged or at all, and that the occurrence of the coronary occlusion was purely co-incidental."

The application for compensation was therefore denied.

The extent of review by this court in this type of case is: Did the Commission act without or in excess of its powers in denying compensation to the plaintiff? Section 42-1-78, U. C. A. 1943.

The test applicable to this type of case to determine whether or not the Commission acted without or in excess of its powers has been clearly crystallized by previous opinions and was stated as follows in *Kent* v. *Industrial Commission*, 89 Utah 381, 57 P. 2d 724, 725:

"In the case of denial of compensation, the record must disclose that there is material, substantial, competent, uncontradicted evidence sufficient to make a disregard of it justify the conclusion, as a matter of law, that the Industrial Commission arbitrarily and capriciously disregarded the evidence or unreasonably refused to believe such evidence."

In *Lorange* v. *Industrial Commission*, 107 Utah 261, 153 P. 2d 272, 273, we quoted with approval from *Kavalinakis* v. *Industrial Commission*, 67 Utah 174, 246 P. 698, as follows:

" 'Unless therefore it can be said, upon the whole record, that the commission clearly acted arbitrarily or capriciously in making its findings and decision, this court is powerless to interfere. * * * It was not intended,* * * that this court, in matters of evidence, should to any extent substitute its judgment for the judgment of the commission.' "

See also *Gagos* v. *Industrial Commission*, 87 Utah 101, 48 P. 2d 449; *Stoddard* v. *Industrial Commission*, 103 Utah 351, 135 P. 2d 256.

Upon the whole record, as a matter of law, did the Commission act arbitrarily or capriciously in finding that the coronary occlusion or thrombosis which plaintiff suffered

was not precipitated or caused by an accident arising out of or in the course of his employment?

As outlined above the medical testimony was in conflict. A competent medical expert, Dr. Walker, testified that physical exertion does not cause such conditions. However, the Commission did not need to go that far to deny compensation. There is substantial competent medical evidence (supplied by Drs. Walker and Olson) that in this case plaintiff's injury was not caused or contributed to by the physical effort he put forth on his job. The Commission, therefore, did not act arbitrarily or capriciously in determining such to be the case.

The plaintiff contends that the cases of *Hammond* v. *Industrial Commission*, 84 Utah 67, 34 P. 2d 687; *Thomas D. Dee Memorial Hospital Ass'n* v. *Industrial Commission*, 104 Utah 61, 138 P. 2d 233, 234; and *Robertson* v. *Industrial Commission*, 109 Utah 25, 163 P. 2d 331, 339, are controlling in this case and support his claim for compensation.

In the *Hammond* case the Commission denied compensation because it concluded all the evidence tending to show the relationship between the exertion on the job and the heart condition was hearsay. We held there was uncontradicted, competent evidence to show that the exertion did aggravate the pre-existing heart ailment and therefore set aside the order and remanded the case for further proceedings.

In the *Dee Hospital* case the principal question before us was whether or not an internal failure caused by the applicant's extra work or overexertion constituted an accident. We held it did and affirmed the Commission's award of compensation to him. On the question of whether or not the exertion contributed to the injury (which is the question before us in this case), the medical testimony was uncontradicted that the exertion did contribute to the coronary occlusion suffered. We said:

"Under the evidence and findings of the Commission * * * there can be no question but what the extra work or over-exertion did aggravate a pre-existing heart ailment which resulted in a coronary occlusion. * * *"

As the majority of the court viewed the evidence on the question of causal relationship between the exertion and the injury in the *Robertson* case, it was susceptible of only one reasonable conclusion—that the exertion by the decedent in his work contributed to the heart affliction he suffered. The court vacated the Commission's order denying compensation. One of the reasons why two members of the court dissented in that case was:

"The commission could properly have found that the heart attack was caused by the exertion, but the evidence does not point so unerringly to that conclusion that we should say as a matter of law that the commission was arbitrary in not so finding.  *  *  *  The evidence in this case is not such as to compel the commission to find that the exertion performed in the pursuit of the employment caused or contributed to the internal failure."

The division of the court in the *Robertson* case was primarily on the interpretation of the evidence and not on the law applicable to the case.

It is apparent that none of these three above discussed cases support plaintiff's contentions in this case. Here the evidence as to whether or not the exertion contributed to the injury is in conflict. We cannot say that as a matter of law the evidence is susceptible of no other interpretation than that the exertion contributed to the injury. The Commission's determination that the exertion did not contribute to the injury must therefore stand.

The order of the Commission is affirmed. No costs awarded.

McDONOUGH, C. J., and WADE, PRATT, and LATIMER, JJ., concur.