NIELSON et al. v. INDUSTRIAL COMMISSION.

No. 7684. Decided October 16, 1951. (236 P. 2d 346.)

See 71 C. J., Workmen's Compensation Acts, sec. 929. Workmen's compensation, prior injury affecting rights to. 58 Am. Jur., Workmen's Compensation, sec. 247; 60 A. L. R. 1299.

*Shirley P. Jones, Shirley P. Jones, Jr.,* Salt Lake City, for plaintiffs.

*Clinton D. Vernon,* Atty. Gen., *Allen B. Sorensen,* Deputy Atty. Gen., *McBroom & Hanni* and *F. A. Trottier,* all of Salt Lake City, for defendants.

HENRIOD, Justice.

This case is before us to review an Industrial Commission award in favor of defendant Hubbard and against plaintiffs, Sec. 42-1-78, U. C. A. 1943. Affirmed, with costs to defendants.

The Commission found that Hubbard suffered two experiences entailing strain of his lumbo sacral area, the first on October 24, 1949 while working for Western Asbestos Company, when he prevented a 360 pound bundle of asbestos sheets from falling down a shaft, the second on July 18, 1950, while employed by plaintiff Davis Nielson Company. The latter injury was followed by severe back strain and disability. Hubbard felt pain at the time of the first incident, but lost no time from work, although consulting a doctor who diagnosed his ailment as low back (muscular) strain, treating him accordingly. Thereafter, Hubbard suffered no pain until the second injury. The Commission also

found the first injury did such damage to his lumbo sacral disc that its degeneration began, that this condition was "aggravated, an extrusion (herniation) precipitated and the process accelerated by" the second injury, resulting in disability, which latter was "precipitated by" the second injury, requiring correctional surgery.

It is obvious that the Commission concluded that no herniation of the lumbo-sacral disc occurred at the time of the first strain, but that such herniation did occur at the time of the second. Also, it seems apparent that the Commission treated the two incidents as separate and distinct injuries, since the findings repeatedly refer to the first and second injuries, by necessary implication excluding the theory so ably urged by plaintiffs' counsel to the effect that the second incident should be treated as a recurrence of the then existing first injury, rendering the carrier having the risk at that time responsible. The award itself, placing the risk on the second employer and its carrier, also is consistent with rejection of the recurrence idea. But plaintiffs' counsel points out that the Commission found the condition resulting from the first injury, i. e., commencement of a degeneration process, was aggravated by the second injury, and may well ask how we can escape the logical conclusion that the condition first created persisted to finality, where Hubbard, although theretofore able to attend to his duties, could not continue. At first blush, it may appear difficult to reconcile the Commission's finding mentioned above with its finding that the second injury precipitated the disability. We believe this can be done.

Careful reading of the findings reveals that the Commission concluded that the first injury produced a condition where "degeneration began." Further, that the

"condition resulting from applicant's injury of Oct. 24, 1949 was aggravated, an extrusion (herniation) precipitated and the process accelerated by his injury of July 18, 1950."

A fair and reasonable construction of this language does not compel an interpretation which concludes that aggravation of a preexisting condition caused the disability. The language would have the same meaning if the Commission had said that

"The injury of July 18, 1950, did three things: (1) Aggravated an old condition; (2) precipitated a hernia; and (3) accelerated the process."

The Commission simply named three results of the first injury, but ascribed to neither of the three nor any combination thereof, the cause of disability. Following closely is a finding that "surgery was performed to relieve a disability *precipitated by the July 18th injury.*" Thus the Commission designated the hernia of July 18th as the cause of disability, without mentioning aggravation or acceleration as a cause, sole or contributing.

The statement in the findings that the "aggravation theory is too well established to require extended comment" is a conclusion which may and should be disregarded *(Utah Copper Co.* v. *Industrial Commission,* 69 Utah 452, 256 P. 397), but it does represent espousal by the Commission of the so-called "aggravation theory" as a basis for the award. Eliminating this gratuitous conclusion which is not binding on us, it follows that the Commission specifically found that a single, isolated injury caused the disability, excluding by necessary implication the first injury as a causal factor or an injury that recurred.

Having determined that disability resulted from the second injury, this case appears strikingly similar to *Aetna Life Ins. Co.* v. *Ind. Comm.,* 64 Utah 415, 231 P. 442, where, although suffering from a previous strain in the groin causing continued pain without herniation, the applicant suffered a second strain in the same place, resulting in a hernia and disability. We held the second injury to be the cause of disability, reversing the Commission's finding that the second injury aggravated the first, on grounds of lack of evi-

dence and the undisputed fact that the first injury caused no hernia.

The facts developed at the hearing in the instant case were somewhat contradictory. Medical testimony appears to us to represent opinion evidence of a conjectural nature with respect to the cause of the herniation. One doctor expressed the opinion that the first injury was muscular strain without herniation. Another thought disc degeneration, which usually leads to herniation, began with the first injury, but admitted that the herniation could have been caused by strain incident to either of the two injuries or a combination of both. A third doctor felt that degeneration began with the first injury, and that herniation was the end result of the degeneration, but that when degeneration begins cannot be determined without continued use of X-ray pictures. Whether Hubbard suffered pain after treatment for muscular strain attending the first injury was the subject of conflicting testimony. On the basis of the record we cannot agree with counsel that there was no dispute in the evidence and that it conclusively appeared that the first accident caused the disability. The principles announced in *Woodburn* v. *Ind. Comm.*, 1947, 111 Utah 393, 181 P. 2d 209, seem controlling and we cannot say as a matter of law the evidence is susceptible of no other interpretation than that contended for by plaintiffs,—or that the findings of the Commission were arbitrary, capricious and unsupported by any substantial evidence.

In view of our conclusion that the Commission found as a fact that the disability was the result of the second injury, without reference to any recurrence of an existing injury, it is unnecessary to discuss the principles of *Continental Casualty Co.* v. *Ind. Comm.*, 63 Utah 59, 221 P. 852, or *Tintic Milling Co.* v. *Industrial Comm.*, 60 Utah 14, 206 P. 278, 23 A. L. R. 325.

WOLFE, C. J., and WADE, McDONOUGH, and CROCKETT, JJ., concur.