298 P.2d 531

Nelson CLAYTON, Plaintiff and Appellant,

v.

Hal S. BENNETT, Stewart M. Hanson and Donald Hacking, as members of the Department of Business Regulation of the State of Utah; Department of Registration and Frank E. Lees, as Director of the Department of Registration, Defendants and Respondents.

No. 8477.

Supreme Court of Utah.
June 11, 1956.

154

E. W. Clyde, Salt Lake City, for appellant.

E. R. Callister, Atty. Gen., Walter L. Budge, Asst. Atty. Gen., for respondents.

CROCKETT, Justice.

This action was brought in the District Court seeking a declaratory judgment that the Utah statutes dealing with the ascertainment of qualifications and licensing of applicants to practice certain professions. and trades are unconstitutional. The trial court refused to so rule and plaintiff appeals.

Plaintiff is a professional engineer, having complied with the law to become licensed as such. He also has a degree in architecture and made application to the Department of Business Regulation to practice that profession. He was given an examination as required by Chapter I, Title 58, U.C.A.1953 after which he was refused a license on the ground that he had failed to pass the examination. Subsequently upon review by the Director of Registration, he was granted permission to take another examination as allowed by the statute [1] because the committee had violated certain rules. He declined to retake the examination, instead brought this. suit to have the laws with respect thereto declared unconstitutional.

We are not in disagreement with. the first three propositions plaintiff asserts: (1) that the defendant Department of Business Regulation, as an administra-

[1]. Sec. 58-1-16, U.C.A.1953.

tive agency, does not determine the constitutionality of statutes;[2] (2) that declaratory judgment coupled with injunctive procedure is a correct method of challenging the constitutionality of the statutes upon which the defendant relies for its authority;[3] (3) that the right to engage in a profession is a property right which is entitled to protection by the law and the courts.[4]

■ It has been recognized since time immemorial that there are some professions and occupations which require special skill, learning and experience with respect to which the public ordinarily does not have sufficient knowledge to determine the qualifications of the practitioner. The layman should be able to request such services with some degree of assurance that those holding themselves out to perform them are qualified to do so. For the purpose of protecting the health, safety and welfare of its citizens, it is within the police power of the state to establish reasonable standards to be complied with as a prerequisite to engaging in such pursuits.[5] Architecture is recognized as one such occupation.[6]

Plaintiff's contention is that, conceding that such regulation is within the police power of the state, the statutes setting up the modus operandi for the Department of Registration and prescribing the appointment of committees to set up standards of qualification and to conduct examinations constitutes a delegation of legislative powers to such committees and is, therefore, unconstitutional.

The material portions of the statutes under attack are:

"Sec. 58–1–5. The functions of the department of registration shall be exercised by the director of registration under the supervision of the commission * * * in collaboration with and with the assistance of representative committees of the several professions, trades * * *."

"58–1–7. It shall be the duty of the * * * committees to submit to the director standards of qualification for their respective professions, trades * * * and methods of examination of applicants. They shall conduct examinations at the request of the direc-

---

2. See Eardley v. Terry, 94 Utah 367, 77 P.2d 362.

3. See Broadbent v. Gibson, 105 Utah 53, 140 P.2d 939; Wallberg v. Utah Public Welfare Comm., 115 Utah 242, 203 P.2d 935; Slater v. Salt Lake City, 115 Utah 476, 206 P.2d 153, 9 A.L.R.2d 712.

4. McGrew v. Industrial Comm., 96 Utah 203, 85 P.2d 608; see also Backman v. Bateman, 1 Utah 2d 153, 263 P.2d 561.

5. Sec. 58–1–5, 58–1–7, 58–1–13, U.C.A. 1953, listing 17 such occupations ranging from accountants through funeral directors, osteopaths, plumbers and sanitarians.

6. See Klafter v. State Board of Examiners, 259 Ill. 15, 102 N.E. 193, 46 L.R.A., N.S., 532.

tor * * * [and] shall pass upon the qualifications of applicants * * * and shall submit in writing their findings and conclusions to the director."

"58-1-13. The following functions and duties shall be * * * performed by the department of registration but only upon the action and report in writing of the appropriate representative committee:

"(1) Defining * * * what shall constitute a school, college, * * * in good standing.

"(2) Establishing a standard of preliminary education deemed requisite to admission to any school, college or university.

"(3) Prescribing the standard of qualification requisite * * * before license shall issue.

"(4) Prescribing rules governing applications for licenses, * * *.

"(5) Providing for a fair and wholly impartial method of examination * * *."

It is plaintiff's position that these sections violate the restriction against the delegation of legislative powers in three respects: (1) the director of regulation can make provision for the qualification of architects only if a board created from practicing architects first acts; (2) the licensing power is delegated to an administrative agency without any definite standards having been prescribed; (3) neither the director nor the architects' rep-

resentative committee are required to give each applicant uniform treatment and equal protection.

■ In support of his first contention plaintiff points to the wording of the statute providing that the Department of Registration shall perform its duty, "*only* upon the action and report in writing of the appropriate representative committee" and reasons therefrom that the actual authority is reposed in the committee. A survey of the entire procedure set up by statute indicates that such is not the case. The Committee, at the request of the director, conducts the examination, making its report of the results thereof to him. If the report is satisfactory and other qualifications have been met, the duty then devolves upon the director to issue the license. He is appointed by and performs his duties under the supervision of the Commission of the Department of Business Regulation, which has final authority as to the carrying out of the functions of the department.

■ In regard to the second matter complained of, the alleged failure of the legislature to prescribe definite standards, it is to be noted that certain basic qualifications relating to education, age, moral character and the requirement of satisfactorily passing an examination are set forth in the statutes.[7] It seems obvious that the legislature could go no further than to set up such general standards. Likewise, it is

7. Chapter 3, Title 58, U.C.A.1953.

not to be expected that any director of registration would have sufficient knowledge of all of such occupations to prescribe the standards and qualifications for them, particularly in view of the fact that with respect to some of them there is constant change. The legislature adopted the convenient and desirable expedient of providing for the appointment of various committees of qualified persons in the several pursuits to aid the department in insuring that the process of screening and certifying qualified practitioners would be efficiently carried out.

A similar attack was made upon the statutes of Washington relating to the licensing of dentists. Its statutes are not identical with ours but are analogous in the essential respects. In the case of Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 305, 67 L.Ed. 590, Mr. Justice Brandeis, speaking for the United States Supreme Court, said:

"The statute provides that the examination shall be before a board of practicing dentists, that the applicant must be a graduate of a reputable dental school, and that he must be of good moral character. Thus, the general standard of fitness and the character and scope of the examination are clearly indicated. Whether the applicant possesses the qualifications inherent in that standard is a question of fact. * * * The decision of that fact involves ordinarily the determination of two subsidiary questions of fact: The first, what the knowledge and skill is which fits one to practice the profession; The second, whether the applicant possesses that knowledge and skill. The latter finding is necessarily an individual one. The former is ordinarily one of general application. Hence it can be embodied in rules. The legislature itself may make this finding of the facts of general application, and by embodying it in the statute make it law. When it does so, the function of the examining board is limited to determining whether the applicant complies with the requirements so declared. But the Legislature need not make this general finding. To determine the subjects of which one must have knowledge in order to be fit to practice dentistry, the extent of knowledge in each subject; the degree of skill requisite; and the procedure to be followed in conducting the examination—these are matters appropriately committed to an administrative board. * * * And a Legislature may, consistently with the federal Constitution, delegate to such board the function of determining these things, as well as the functions of determining whether the applicant complies with the detailed standard of fitness."

In the case of Montejano v. Rayner,[8]

8.   33 F.Supp. 435, 438.

the Federal District Court for our sister state of Idaho, in an action challenging the law controlling persons wishing to engage in barbering said:

"The general principle granting authority to the legislature under the police power is that trades or professions can be regulated where they effect the health, comfort and safety of the public * * *.

"The legislature may also authorize a board of examiners to prescribe and determine the qualifications required * * * unless such qualifications exceed constitutional limitations and are unreasonable * * *.

"If the Board prescribes fair and reasonable qualifications appropriate to the calling intended to be regulated and operating generally upon all in like situations their acts would be valid."

■ The question of delegation of Legislative power was presented to this court in the case of Rowell v. State Board of Agriculture.[9] It was there stated:

"That the legislature may not surrender or delegate its legislative power is elemental.

"It may, however, provide for the execution through administrative agencies of its legislative policy, and may confer upon such administrative officers certain powers and the duty of

determining the question of the existence of certain facts upon which the effect or execution of its legislative policy may be dependent. [Citing cases.]"

This accords with the generally accepted view.

American Jurisprudence in its treatise on this subject states:

"There are no constitutional objections arising out of * * * the creation of administrative boards empowered within certain limits to adopt rules and regulations and authorized to see that the legislative will expressed in statutory form is carried out by the persons * * * over whom such board may be given administrative power."[10]

■ We likewise find no merit in the attack upon these statutes upon the ground that there is no requirement that applicants be accorded equal protection. Subsection 5 of Section 58-1-13 expressly provides for: "a fair and wholly impartial method of examination." In any event, the applicant is not at the mercy of the committee, the director or even of the Commission. If they should fail to regularly pursue their authority, or refuse to do so, or act in any manner which is arbitrary, capricious or discriminatory as to the applicant, recourse to the courts is available.[11] The

---

9. 98 Utah 353, 99 P.2d 1, 3.

10. 11 Am.Jur., Con.Law, p. 960.

11. Sec. 58-1-36, U.C.A.1953; see also Peed v. Gresham, 53 Okl. 205, 155 P. 1179; City of Wewoka v. Rose Lawn Dairy, 202 Okl. 286, 212 P.2d 1056.

action of the director in the instant case in reviewing the examination and ordering a re-examination of the plaintiff on the ground that the committee had violated some of the rules of the department manifests plainly that he was afforded every right and consideration due him.

Judgment is affirmed. Costs to respondents.

McDONOUGH, C. J., and HENRIOD, WADE and WORTHEN, JJ., concur.