329 P.2d 389

**L. C. SKELTON, Plaintiff and Respondent,**

v.

**Frank E. LEES et al., Defendants and Appellants.**

No. 8752.

Supreme Court of Utah.

Aug. 13, 1958.

E. R. Callister, Jr., Atty. Gen., Raymond W. Gee, Asst. Atty. Gen., for appellants.

Dan S. Bushnell, Salt Lake City, for respondent.

CROCKETT, Justice.

L. C. Skelton instituted proceedings in the district court to review and reverse the action of Frank Lees, Director of the Department of Registration for refusing to register and license him as a civil engineer. After a hearing the district court sustained his contention that the Director had acted arbitrarily and ordered the Department to grant his request. The Department appeals.

The errors assigned may be regarded as:

(1) That the district court incorrectly deemed the proceeding to be a trial de novo;

(2) That it improperly determined that the Department had acted arbitrarily in refusing the plaintiff's application.

Plaintiff's application to the Department to become registered as an engineer was duly referred to the examining committee set up by statute.[1] He was approved for registration conditioned upon his successful completion of an examination prescribed by the committee in accordance with Sec. 58–22–12(1) (b) S.L.U.1955, which action was approved by the Director who so advised plaintiff. Plaintiff declined to take the examination and informed the Department that he sought registration under(1) (c) of the above section, which allows licensing without examination, under special circumstances, based upon reputation, training, and experience in practical engineering. After re-examining plaintiff's application the committee advised the Director that plaintiff did not qualify under the latter section and reaffirmed its recommendation that he take the examination.

Plaintiff then instituted proceedings for review in the district court. He there urged that he qualified under Sec. (1) (c) above referred to; and also for the first time sought to take advantage of a section enacted in 1955, 58–22–22(2), which allows registration without an examination of persons actively engaged in the practice of engineering in fields which theretofore had not been required to register.

After reviewing the record made before the Department, and taking additional evidence, the district court ruled that the Department's action was arbitrary and found that plaintiff was entitled to be registered under both of the sections above referred to.

The position taken by the plaintiff is that the proceeding in the district court was in effect a trial de novo of his application; whereas the Department contends that it should have been limited to a review of the record made before it. Plaintiff relies upon the case of Baker v. Department of Registration[2] and the subsequent

1. Ch. 22, Title 58, U.C.A.1953 (Pocket Supp.) Ch. 118, S.L.U.1955.

2. Baker v. Department of Registration, 1931, 78 Utah 424, 3 P.2d 1082.

one of Withers v. Golding.[3] Without detailing the changes in the applicable statutes it can be said in summary that the statute relevant to the instant review is significantly different from the ones involved in either of the two cases just referred to. The Baker case was decided in 1931 under the statute of 1923, which merely stated in general terms that an "appeal to the courts may be had" without any specification of the nature of the proceeding or any restriction thereon.[4] The Withers case was decided in 1941 under the statute enacted in 1933, which provided that an applicant or holder of a certificate " * * * aggrieved by any ruling of the department * * * may * * institute an action in the district court," and allowed the court to " * * * determine the issues of both questions of law and fact and may affirm, set aside, or modify the ruling complained of."[5] (Emphasis added.) The emphasized language provides a foundation for a greatly different type of proceeding than under Sec. 58–22–19 [6] applicable in the instant case, which we discuss below.

In 1935 by Chapter 7a, Title 79, professional engineers and land surveyors were first brought under the Department of Registration. Section 18 thereof provided that the "general provisions of Title 79,. Revised Statutes of Utah 1933, shall be applicable to the administration and enforcement of this act * * *." which provision was carried into the 1953 Code as Section 58–10–18. In 1955 the legislature repealed the entire Chapter 10 of Title 58 governing engineers and land surveyors and adopted a new act covering them which changed the whole administrative setup and also the qualifications for registration.[7]

The matter of significance is that the new enactment of 1955 was obviously purposed to completely cover regulations pertaining to engineers and surveyors. Near the end of that chapter there was added Sec. 58–22–19 which is the only part of the act dealing with review by the courts. It is true that the compiler in titling the section used the designation "Revocation of certificates" and made no reference to the denial of applications. Suct title, however, is not persuasive since it was not contained in the original act as passed by the legislature. It is to be conceded that the earlier paragraphs of Sec. 19 deal with revocation and leave some basis for uncertainty as to whether that section applies to the denial of applications. However, when it is realized that

3. Withers v. Golding, 1941, 100 Utah 179, 111 P.2d 550.

4. Laws of 1923, Ch. 49, Sec. 1, subd. f.

5. 79–1–36 Revised Statutes 1933, now 58–1–36 U.C.A.1953.

6. 58–22–19, U.C.A.1953 as amended (1955 Pocket Supplement).

7. See footnote 1, supra.

the final paragraph in Sec. 19 contains language which would seem meaningless unless it applies to proceedings such as the instant one, it seems that the most reasonable interpretation thereof is that its purpose was to provide the method of review by the courts for all matters arising under the chapter. This is borne out by the general language of said final paragraph, particularly the words emphasized:

"*Any person* who shall feel aggrieved by any action of the committee in *denying* or *revoking* his certificate of registration may within thirty days *appeal* therefrom to the district court which shall *affirm* or *reverse* the action of the committee." (Emphasis added.)

Incidentally, we reflect that if the above paragraph had had a separate number and title instead of being the concluding paragraph of Sec. 19, which starts out dealing with revocations, there could have been no doubt about its general application to the entire chapter. A further important consideration is that this statute relates specifically to engineers. Therefore if the review necessary under the law is reasonably to be found covered therein, it governs, and it is improper to look to the general statute, 58–1–36, for the method of review.

█ Concluding as we do, that the above statute applies to appeals from the

denial of an application for a certificate, the question then becomes, what is the nature of the review? It is obvious that such statute is significantly different from the general statute, 79–1–36, referred to above, which formerly governed such procedure. The new enactment does not use the phrase "institute an action in the district court" nor contain the general endowment of authority to make determinations of fact and law; nor to modify the judgment. The proceeding is called an *appeal* and the court's prerogative is limited to *affirming* or *reversing* the action taken. We must assume that the change in the statute was made for some purpose and give effect thereto. It seems plain that the purpose was to reduce the scope of review by the district court.

Comparison of the statutory basis for procedure with respect to the other administrative departments of state government also supports the idea that the review here is intended to be in the nature of certiorari only. The Industrial Commission[8] and the Public Service Commission[9] are granted power to make final determinations of fact, and, under the prescribed review by the Supreme Court, it is empowered only to *affirm* or *set aside* the orders of those commissions.

On the other hand, statutes intended to give power of plenary proceeding upon

8. 35–1–85, U.C.A.1953.

9. 54–7–16, U.C.A.1953.

review plainly so indicate by the terms used. With respect to the State Engineer, a plenary review is expressly provided for[10] and another section refers to a trial de novo.[11] In reference to the Trade Commission it is stated that the aggrieved party, " * * * may commence a suit within the district court" and that the court may, " * * * set aside, vacate, amend or affirm" the order made.[12] Regarding contractors it is provided that the review shall be tried as "an original action" in the district court.[13] Such specificity in granting powers in some chapters of Title 58 would indicate that any such broad grant of power would be spelled out.

It is our conclusion that the district court should be limited to a review of the record made before the Department, and is thus bound by the established rules applicable to such reviews. The determination of the administrative agency should not be reversed merely because the court would have come to a different conclusion.[14] It will interfere only if the Department has acted capriciously, arbitrarily, or outside the scope of its authority.[15]

We proceed to the merits of the controversy: Whether the plaintiff met the qualifications for registration without submitting to an examination under either of the two sections of the statute relied upon by him:

The first is 58–22–22. It is part of the 1955 Act and provides for the validation of all existing certificates of engineers and grants "grandfather" rights to practicing engineers who had not theretofore been required to be registered. Inasmuch as the three principal fields of engineering: mechanical, electrical and civil had been required to be registered since 1935, they are excluded from the latter provision. Incidentally they had been granted such "grandfather" rights by the first registration act in 1935.[16] The 1955 Act by definition broadened the field beyond the three main classes mentioned above and required registration of any branch of engineering which "affects the safety of life, health or property, or the public welfare."[17]

The so-called "grandfather" right permitted persons practicing engineering in

10. 73–3–14, U.C.A.1953.

11. 73–3–15, U.C.A.1953.

12. 13–2–11(6), U.C.A.1953.

13. 58–23–1 et seq. See specifically 58–23–17, U.C.A.1957 Pocket Supp.

14. Peterson v. Industrial Commission, 1942, 102 Utah 175, 177, 129 P.2d 563.

15. Woodburn v. Industrial Commission, 1947, 111 Utah 393, 181 P.2d 209; Union Pac. R. Co. v. Public Service Commission, 1956, 5 Utah 2d 230, 300 P.2d 600.

16. Allowed "grandfather" right in 79–7a–18, U.C.A.1943, and 58–10–18, U.C.A. 1953.

17. 58–22–2, U.C.A. as amended 1955 (Pocket Supp.).

the other fields newly required to be registered, to register without examination, upon the filing on an application within one year; the payment of a $15 fee; and satisfying the committee that the applicant: (a) is of good character, (b) has been a resident of the state and practiced engineering in the field applied for for at least four years immediately preceding; and (c) has had responsible charge of engineering work of a character satisfactory to the committee.

■ Plaintiff argues that the above statute is discriminatory and therefore unconstitutional because it grants the "grandfather" rights to all engineers except those in the fields of civil, electrical and mechanical engineering. The argument is untenable because, as above noted, these three basic engineering fields had been theretofore required to be registered and licensed, and had been accorded the "grandfather" privilege in connection with initial registration. The broadened classification in the Act of 1955, bringing in the other engineering fields, but followed the same pattern. Furthermore, as a practical matter no engineer, including plaintiff, could have been lawfully practicing in this state for four years in one of those three fields without being licensed. Therefore, it would have been idle to have made any provision for them to become licensed by reason of such practice. In this regard the plaintiff finds himself in a

dilemma: on the one hand he claims to have been in responsible charge of important engineering work; on the other, he asserts that he has not been in violation of the law requiring registration of civil engineers because he was working as a subordinate of a person holding a certificate of registration therefor, exempted under Sec. 58–22–21(d) of the Act.

■ The only differentiation of treatment of persons by the statute is as to classes; and such difference is consonant with its general purpose of regulating the registration and licensing of engineers. Inasmuch as it applies uniformly to all persons within the same class, we are of the opinion that it makes no unreasonable discrimination and is valid. Therefore, the plaintiff was not entitled to become registered as a civil engineer under the section under discussion because civil engineers are excluded by its express terms.

The other section under which plaintiff claims the right to registration without examination is 58–22–12(1) (c). It was designed to apply to persons who have attained a good reputation and some distinction in the engineering field but have never been formally registered as engineers. It provides for the licensing of one who demonstrates to the committee that he is: (1) an engineer of established and recognized standing in the profession; (2) has engaged in the practice of engineering

for at least 12 years; (3) has been for five years in responsible charge of important engineering work of a character satisfactory to the committee; and (4) meets certain age, moral character and residency requirements.

■ The plaintiff also challenges this section as being unconstitutional as an unlawful delegation of power to the committee to determine the qualification of engineers without specifying the standards upon which the committee is to act. In the recent case of Clayton v. Bennett[18] we considered the same question in relation to the licensing of architects. For reasons explained therein it was held that the legislature could delegate to a properly qualified and constituted committee the determination of standards for such a profession in order to protect the interests of the public.

Finally, plaintiff asserts that the announced policy of the Department and of the committee to use Sec. (1) (c) sparingly, by allowing to register without examination only engineers who have in some manner attained an outstanding reputation or some distinction in the field, is arbitrary and not in accord with the purposes of the statute. He avers that such policy is designed to protect the profession rather than the public; and will have the effect of excluding men, such as himself, who are fully qualified in the practical aspects of the profession.

Analysis of the above contention, and its application to plaintiff, can best be made by considering the credentials he presented as a basis for registration. The following facts disclosed by the record are pertinent: Plaintiff has had some night school courses on the college level, but has never completed high school; does not belong to any professional engineering societies; has made no creative contribution to any engineering committee or society; has never published anything in the field; the two projects he lists as supporting his being "in responsible charge of engineering work for a five-year period," were both completed within a two-year period; his claim to "have been in supervisory capacity since 1945" in support of his being in "responsible charge" of important engineering work rests upon his own statement. Of the eight persons he listed as supporting his application only four are themselves engineers; of the latter, only two had known the plaintiff for sufficient time to certify he had 12 years practical engineering experience; and the one of them relied upon by the plaintiff at the trial in district court listed only nine years of such activity by the plaintiff. It is true that all eight of the persons indicated that they felt plaintiff

18. Clayton v. Bennett, 1956, 5 Utah 2d 152, 298 P.2d 531.

was qualified *to be placed* in responsible charge of engineering work, but there was no affirmative statement by any of them that he had in fact been so engaged for five years as required by the statute.

By reason of his ability and experience the plaintiff is undoubtedly competent in the engineering activities he has pursued for his employer, yet it seems quite clear that there is ample basis in the evidence for the committee to regard him as not having attained the distinction in the engineering field requisite to qualify him for registration under 58–22–12(1) (c). Therefore, its action cannot be regarded as capricious or arbitrary. It did give him approval as being qualified for waiver of the formal educational requirements, and indicated that he could take the examination under Sec. 58–22–12(1) (b). This determination seems entirely proper under the circumstances.

The action of the district court is rescinded and the determination made by the Department is reinstated. No costs awarded.

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD, J., concurs in result.

WORTHEN, Justice (concurring).

I am in agreement with Mr. Justice CROCKETT'S conclusion that plaintiff is not entitled to have the license applied for issued without passing the required examination.

Plaintiff's contention that he is exempted from taking the examination by reason of having practiced engineering in the field applied for for at least four years is not persuasive when it is shown that whatever practice he did was in violation of the statute[1] which declared it to be unlawful for "any person to practice or engage in or attempt to practice * * * any profession, trade or occupation that may be subject to the department of registration without authority so to do as in this title provided." Mr. Justice CROCKETT makes answer to plaintiff in the following language:

"Furthermore, as a practical matter no engineer, including plaintiff, could have been lawfully practicing in this state for four years * * * without being licensed. * * *"

In my opinion the conclusion reached by Mr. Justice CROCKETT is fully justified by the fact that plaintiff had not been lawfully practicing but had been practicing in violation of law. The statute is a complete bar to plaintiff's right to prevail unless he takes the required examination. It is likewise unnecessary to pass on the

1. Section 58–1–38 (formerly § 79–1–38).

question as to whether the review before the district court should have been made upon the record before the Department of Registration and the committee, or whether the trial court was authorized to take testimony and determine plaintiff's rights after a trial de novo. The evidence submitted to the district court is impotent to overcome the conditions precedent to plaintiff's right to be licensed, provided for in the statute. It is against public policy to permit one to ignore the laws made for the protection of the public and say, "I had no right to practice without a license, but you did nothing about it, and the Department has no right to refuse me a license because I have actually been practicing as required."

I however find myself out of agreement with Mr. Justice CROCKETT as to the nature of the review applicable in this case.

I cannot agree that the statute provides for and contemplates that the review of the Department of Registration is intended to be in the nature of certiorari only.

Mr. Justice CROCKETT observes that the Industrial Commission and the Public Service Commission are granted power to make final determinations of fact and that this court in reviewing their actions is empowered only to *affirm* or *set aside* the order of the commission.

2. Section 35–1–85, U.C.A.1953.

It should however be remembered that the statute[2] applicable to the Industrial Commission provides:

"After each formal hearing, it shall be the duty of the commission to make findings of fact and conclusions of law * * * The findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review * * *."

The statute applicable to the Industrial Commission further provides:[3]

"No new or additional evidence may be introduced in such court, but the cause shall be heard on the record of the commission as certified by it. The review shall not be extended further than to determine:

"(1) Whether or not the commission acted without or in excess of its powers.

"(2) If findings of fact are made, whether or not such findings of fact support the award under review."

Mr. Justice CROCKETT impliedly concedes that under the Statute of 1933, Section 79–1–36 (now Sec. 58–1–36, U.C.A. 1953) the review authorized was a trial de novo.

The language of Section 58–22–19 quoted by Mr. Justice CROCKETT must be un-

3. Sec. 35–1–84.

reasonably strained to justify the conclusion reached by him.

How can this language—"Any person * * * aggrieved by any action of the committee in denying * * * his certificate" apply to plaintiff? How can the committee deny his *certificate* before one is issued? The only reasonable construction of the language used is that it refers to the denial of the application to reissue a certificate. The section as heretofore observed provides "The director * * * may re-issue a certificate of registration to any person whose certificate has been revoked. * * *"

In my view of the matter, assuming that Section 58–22–19 is applicable here, which I do not concede, there is not in the section language which can be construed as Mr. Justice CROCKETT would construe it.

Unlike the Industrial Commission Act and the Public Service Commission Act this court is not designated as the court of review. There is no language that would lead to the conclusion that it was a review in the nature of certiorari. The district court, a proper court to take evidence and conduct another trial is vested with jurisdiction. The section does not declare that findings and conclusions of the committee or the director on questions of fact shall be conclusive and final.

To reach the conclusion reached by Mr. Justice CROCKETT hurdle after

hurdle of unwarranted conclusions must be scaled. In my opinion when the district court is charged with the duty of affirming or reversing the action of the committee there is implied and intrinsic in the statute the authority to conduct a hearing de novo. Nothing in the statute mitigates against that conclusion.

Chapter 118 of the Laws of Utah 1955 now appearing as Chapter 22 of the 1957 Pocket Supplement to Volume 6 of U.C.A. 1953 is referred to by Mr. Justice CROCKETT, and he observes that in 1955 the legislature repealed the entire chapter governing engineers and land surveyors and adopted a new act—Chapter 22 of Title 58.

There is no language used in Chapter 22 which can be construed to repeal the procedure set out in Section 58–1–36, U.C.A.1953 (formerly Sec. 79–1–36). If that section has been supplanted by Chapter 22 it is by implication.

Section 58–22–10 of the act provides:

"The records of the committee shall be *prima facie* evidence of the proceedings of the committee and department set forth therein * * *." (Emphasis added.)

The above language is quite different from that used in the statute applicable to the Industrial Commission. There it is stated "The findings and conclusions of the commission on questions of fact *shall*

*be conclusive and final* and shall not be subject to review."

The statute having made the records of the committee *prima facie* evidence necessarily contemplates that the same may be assailed and are not conclusive.

It is likewise significant that Section 58–22–19 in the body thereof makes no reference to an application for license but purports only to deal with the revocation of licenses.

The compilers' headnote to the section reads as follows:

"Revocation of certificates—Grounds —Charges of fraud, deceit, gross negligence, incompetence, or misconduct—Hearing—Re-issuing—Appeals."

Without giving any consideration to the caption it will be observed that the body of the section declares as follows:

"The committee shall have the power to *revoke the certificate* of registration of any registrant who is found guilty of:

"(a) the practice of any fraud or deceit in obtaining a certificate of registration;

"(b) any gross negligence, incompetency, or misconduct in the practice of engineering or land surveying as a registered professional engineer or land surveyor."

The section then provides that the committee or any person may prefer charges of fraud, deceit, gross negligence, incompetency, or misconduct against *any registrant*.

Provision is made for hearing the charges by the committee, for furnishing a copy of the charges, for giving notice of the time and place of hearing. It is further provided:

"At any hearing, the *accused registrant* shall have the right to appear personally and by counsel, to cross-examine witnesses appearing against him, and to produce evidence and witnesses in his defense. * * *

"If, after such hearing, it is determined that the charges are well founded, *the director shall revoke the certificate of registration of such registered professional engineer or land surveyor.*

"The director, for reason the committee may deem sufficient, *may re-issue a certificate* of registration to any person whose certificate has been revoked, providing four or more members of the committee vote in favor of such *re-issuance.* A new certificate of registration, to replace any certificate *revoked,* lost, destroyed, or mutilated, may be issued * * *.

"Any person who shall feel aggrieved by any action of the committee in *denying* or *revoking his certificate* of registration may within thirty days appeal therefrom to the district court

which court shall affirm or reverse the action of the committee. * * *" (Emphasis added.)

The last paragraph above is the one quoted by Mr. Justice CROCKETT.

It is strange indeed that if the legislature intended the paragraph quoted by Mr. Justice CROCKETT from Sec. 58–22–19 to apply to the denial of an application for certificate, would say nothing about an application for certificate. The use of the language "in denying * * * his certificate" may be appropriate to the reissuance of a certificate that has been revoked. In fact it is improper to say that the committee could deny the certificate of registration. It might revoke a certificate and the director might act improperly in denying his right to have a certificate reissued as provided for. Until a certificate has been issued there is no certificate to deny. If it was intended that the section apply to an application for a certificate it would read "in denying his application for a certificate or in revoking his certificate."

Section 58–1–36 deals with "recourse to the courts" generally and provides "for instituting an action in the district court, against the director by an applicant for * * * a * * * certificate * * * affected and aggrieved by any ruling of the department of registration" and authorized the court to "determine the issues on both questions of law and fact and may affirm, set aside or modify the ruling complained of."

I do not believe that the paragraph quoted from Sec. 58–22–19 was intended to supersede Sec. 58–1–36 as to refusal of an application for a certificate since the former section deals only with revocation of certificates and not with application therefor, and since by so doing we would substitute a clear and definite proceeding for one of questionable application.

I am of the opinion that the trial court was vested with jurisdiction to review the matter de novo, but that plaintiff failed to establish his right to a certificate.