## STATE v. JOHNSON.

No. 2571.   Decided December 16, 1913 (137 Pac. 632).

1. SODOMY—COMMON LAW.   Under Comp. Laws 1907, sec. 2488, providing that the common law of England, except in so far as it is repugnant to the federal Constitution and the state Constitution and statutes, shall be the rule of decision, the definition of the infamous crime against nature with man or beast denounced by section 4228 must be sought in the common law, not being defined by statute.   (Page 19.)

2. SODOMY—OFFENSE—WHAT CONSTITUTES—"CRIME AGAINST NATURE."   At common law the term "sodomy" was equivalent to the term infamous crime against nature; hence, as sodomy could be accomplished only by copulation in anum, the infamous crime against nature denounced by Comp. Laws 1907, sec. 4228, but not defined, does not include copulation by one male person in the mouth of another, the definition being dependent on the common law.   (Page 19.)

3. CONSTITUTIONAL LAW—PROVINCE OF JUDICIARY.   In view of Const. art. 5, sec. 1, separating the powers of government and prohibiting each department from exercising the functions of the others, the Supreme Court cannot declare any conduct a crime, no matter how morally reprehensible it may be, where it is not so declared by the legislature.   (Page 25.)

APPEAL from District Court, Fifth District; *Hon. Joshua Greenwood,* Judge.

Andrew G. Johnson was convicted of the infamous crime against nature, and he appeals.

REVERSED.

*L. A. Miner* for appellant.

*A. R. Barnes,* Attorney General, *E. V. Higgins* and *G. A. Iverson,* Assistant Attorneys General for the State.

McCARTY, C. J.

The defendant, a negro, was convicted in the district court of Beaver County, Utah, of the infamous crime against

nature. He was prosecuted under Comp. Laws 1907, section 4228, which provides that "every person who is guilty of the infamous crime against nature committed with mankind or with any animal, is punishable by imprisonment in the state prison not less than three years nor more than twenty years." It is alleged in the information that the defendant committed the act therein charged with his mouth. He demurred to the information on the ground that "it does not state facts sufficient to constitute a public offense," and after conviction moved the court for a new trial. One of the grounds alleged in the motion was that the verdict is "contrary to law." The acts charged in the information constitute an unlawful assault, but the court did not submit that to the jury, nor was it requested to do so. The only issue submitted to them relates to the direct acts charged. The only important question presented by the appeal and necessary to be considered is whether or not the infamous crime against nature can be committed by one male person upon another with the mouth.

The statutes of this state do not designate or mention any particular act or acts constituting the crime; therefore, in determining whether or not the acts charged constituted a crime, we, under Comp. Laws 1907, section 2488, must look to and be governed by the common-law definition. That section provides that "the common law of England, so far as it is not repugnant to, or in conflict with the Constitution of the United States, or the Constitution and laws of this State *shall be the rule of decision in all of the courts of this state.*" (Italics ours.)

At common law "sodomy" and the term "infamous crime against nature" meant the same thing and were used interchangeably. In 4 Blackstone's Commentaries, 215, the author refers to and characterizes sodomy as the infamous crime against nature. Nor is there any distinction made as to the meaning of these terms by the more modern writers on criminal law. In 2 McClain's Criminal Law, 1153, it is said:

"This offense is sufficiently described by calling it, with Black-
stone, the crime against nature, committed either with a human
being or a beast."

In Wharton's Criminal Law (11 Ed.) section 753, the
crime is defined as follows:

"Sodomy is the 'crime against nature' or the 'infamous crime
against nature'; these phrases being used as synonymous with
the word 'sodomy' in all its various branches or desigations."

25 A. & E. Ency. L. (2 Ed.) 1144; Black's Law Dict.
299; Anderson's Law Dict. 958. See, also, 2 Words and
Phrases, 1740, and 7 Words and Phrases, 6539.

The courts of last resort of practically all of the jurisdic-
tions of this country in which this question has arisen, and
where the statutes as in this state, fail to define the crime of
sodomy other than as "the infamous crime against nature
committed with mankind or any animal," or "with mankind
or beast," seem to accept and apply the common-law defini-
tion in determining whether the particular acts charged in
an indictment or information do or do not constitute the
crime. We deem it unnecessary to cite and review all these
decisions. Attention, however, is invited to 25 A. & E. Ency.
L. (2d. Ed.) 1145, and the numerous cases cited in the foot-
notes to the text in which the crime in all of its phases is
discussed.

This brings us to the question of whether or not the acts
charged in the information, tested by the common-law defini-
tion of the infamous crime against nature, constitute a viola-
tion of the penal statute under consideration. In 1 Whar-
ton's Criminal Law (11th Ed.) section 754, it is said:

"Sodomy proper is the carnal copulation of human beings in
other than the natural manner; that is, 'against nature' and per
anum."

This, says the author, is the common-law definition; and,
while he says this definition has been much modified "under
the present doctrine," it will be noticed, by pursuing his dis-
cussion of the subject, that the modification is largely, if

not solely, due to the broadening of the term by legislative enactments rather than by judicial construction. In section 757 of the same volume the author says:

"Statutes have been passed in the majority of the states defining and punishing the crime of sodomy in all its branches. . . . Many of these statutes designate the offense as 'the crime against nature,' or the 'detestable and abominable crime against nature,' 'the infamous crime against nature,' and the like, including thereunder all such acts, whether with man or beast. Some of these statutes provide for the punishment without any attempt at a definition of the crime, in which case, in all states in which the common law originally prevailed or has been adopted by statute, the common-law definition of the crime will prevail."

In 3 Russell on Crimes 249, it is said:

"The offense consists in a carnal knowledge committed against the order of nature by man with man; or in the same unnatural manner with woman; or by man or woman in any manner with beast."

Again, on page 250, the author says:

"To constitute this offense, the act must be in that part where sodomy is usually committed. The act in a child's mouth does not constitute the offense."

In 2 Bishop's Criminal Law (7 Ed.) section 1191, the crime is defined as follows:

"Sodomy is a carnal copulation, by human beings, with each other against nature, or with a beast."

Again, in section 1194 of the same volume, he says:

"A penetration of the mouth is not sodomy."

In 2 McClain's Criminal Law, section 1153, the author, in defining the manner in which the crime may be committed, uses the same phraseology as that used by Mr. Russell. It clearly appears from the foregoing authorities that, under the common-law definition of the offense and where, as in this state, the definition has not been broadened or enlarged

by statute, the acts charged in the information do not constitute a penal offense. Our conclusion is supported by the following cases: *Commonwealth v. Poindexter,* 133 Ky. 720, 118 S. W. 943; *People v. Williams,* 59 Cal. 397; *Prindle v. State,* 31 Tex. Cr. R. 551, 21 S. W. 360, 37 Am. St. Rep. 833; *Lewis v. State,* 36 Tex. Cr. R. 37, 35 S. W. 372, 61 Am. St. Rep. 831; *Harvey v. State,* 55 Tex. Cr. R. 199, 115 S. W. 1193; *Kinnan v. State,* 86 Neb. 234, 125 N. W. 594, 27 L. R. A. (N. S.) 478. The last is cited in 21 Ann. Cas. 335. We there invite attention to an extended note in which the annotator cites and reviews the leading cases on the subject both in this country and in England.

Counsel for the state rely upon the following cases: *Means v. State,* 125 Wis. 650, 104 N. W. 815; *Honselman v. People,* 168 Ill. 172, 48 N. E. 304; *State v. Whitemarsh,* 26 S. D. 426, 128 N. W. 580; *State v. Start,* 132 Pac. 512; *Herring v. State,* 119 Ga. 709, 46 S. E. 876. In *Means v. State* the Wisconsin court held that an act similar to the acts charged in this case was a violation of section 4591 of the statutes of that state. But that statute provides that the "crime may be committed by he penetration of the mouth," etc. Because of that dissimilarity of the statute we think the case is not applicable. The Illinois statute provides that every person "convicted of the crime of . . . sodomy or other crime against nature . . . shall be deemed," etc. In *Honselman v. People* that court held, and we think correctly, that, "while the crime against nature and sodomy have often been used as synonymous terms," the Criminal Code of that state, defining infamous crimes, "plainly shows that the legislature included in the crime against nature other forms of the offense than sodomy or buggery." The phrase "other crime against nature," associated as it is with the word "sodomy" by the disjunctive, is broad and comprehensive in its meaning and might well include any act of copulation that is contrary to or against the order of nature. That decision, therefore, is also not in point. The Georgia statute provides that "sodomy is the carnal knowledge and connection against the order of na-

ture," etc. In the case of *Herring v. State, supra,* the Georgia court, construing the statute, said:

"It will be noted that this definition contains no limitation as to the organ with which such unnatural connection may be made."

The statute, as thus construed, and we are not prepared to say that the construction is an unreasonable one, includes acts of unnatural copulation not included in the common-law definition of sodomy or the infamous crime against nature. The Georgia case, therefore, is of no assistance to us in this case. The Oregon statute defining sodomy is much broader than ours. Section 1939 of the Criminal Code of that state provides that, "if any person shall commit sodomy or the crime against nature either with mankind or beast, such person, upon conviction thereof, shall be punished," etc. Section 1405, that "proof of actual penetration into the body is sufficient to sustain an indictment for . . . the crime against nature." In the case of *State v. Start,* where it was alleged that the crime was committed in the same manner as is alleged in the case at bar, the Supreme Court of Oregon, in that case, construing the foregoing statute, said:

"No particular opening of the body into which penetration can be made is specified in this section (1405). It follows that the actual penetration of the virile member into any orifice of the human body except the vaginal opening of the female is sufficient for the establishment of the crime in question."

That such is a reasonable construction of the Oregon statute is too plain to admit of serious discussion; hence this case, like the three preceding it, is no authority either for or against our conclusion. The South Dakota statute defining sodomy is substantially the same as our own. In the South Dakota case (*State v. Whitemarsh*), where the acts charged were of the same character as charged in the case at bar, it was held that the acts constituted, in the language of the statute, "the detestable and abominable crime against nature," but it is said in the opinion that "it must be conceded that under the common law sodomy could not be committed by means of the mouth." The court further says:

"Certainly this unusual act is many times more 'detestable and abominable' than that made criminal at common law. As was well said by the court in *State v. Vicknair*, 52 La. Ann. 1921, 28 South. 273: 'But why, in the common-law courts, the use of the mouth should not have been considered as much against nature as though the act were committed per anum is incomprehensible.' "

We thus have copied somewhat copiously from the South Dakota case because we think it is the only case cited which in any degree holds contrary to our conclusion; and while it is held in that case that under the South Dakota statute, which is substantially the same as ours, the acts charged in the information constitute the crime in question, that court, nevertheless, concedes that such acts do not amount to sodomy as defined by the common law. When it is shown, as we have, that, under the statutes of this state, we, in determining whether the acts charged constitute the "infamous crime against nature," must resort to and be governed by the common-law definition, the decision, to some extent, is an authority supporting our conclusion. The Louisiana case cited by the South Dakota court can have but little, if any, bearing upon the question here under consideration for the reason that the Louisiana statute provides that any one convicted of the crime against nature "committed with mankind or beast, with the sexual organs, or with the mouth, is punishable," etc. The Oregon Supreme Court in *State v. Start, supra,* observes that

"It is an offense against nature. There can be no difference in reason whether such an unnatural coition takes place in the mouth or in the fundament. . . . The moral filthiness and iniquity against which the statute is aimed is the same in both cases. Each is rightfully included in the true scope and meaning of the common-law definition quoted from Hawkins."

In *State v. Whitemarsh* the same thought is expressed in language somewhat different but no less emphatic. Hence counsel for the state, in their brief, strenuously insist that these expressions furnish a "rational and enlightened solution of the question involved, whether the common-law

definition of sodomy or the crime against nature is resorted to or not." We do not think so.

While we, from the standpoint of decency and morals, fully concur in all that these and other courts have said regarding the loathsome and revolting character and enormity of the act charged, yet we cannot, in the absence of legislative enactment making such acts criminal and punishable, denounce and punish them as crimes. To do so would in effect be judicial legislation. *Kinnan v. State, supra.* This view is well expressed in *Davis v. Brown,* 27 Ohio St. 326, in an action for slander where general damages only were sought to be recovered. That court says:

"The words alleged to have been spoken charged the plaintiff, a young man, with what is known in the text-books as the crime against nature. This is not made an indictable offense by the laws of Ohio."

In response to the contention that the words spoken were actionable *per se* notwithstanding they charged plaintiff with an act which was not an indictable offense in that state, the court, in referring to jurisdictions where sodomy is an indictable offense, further said:

"Wherever such a statute exists, the charge is actionable; but, in the absence of legislation on the subject, it would savor of judicial legislation to make any further innovation on the rule."

The court also observed:

"In view of the injurious consequences of such a shocking charge, we confess to being strongly tempted to make one further innovation; but looking back to that period of doubt and uncertainty to which we have referred, and remembering that it is of more importance to have a rule, well understood and easily defined, of practical application, and sufficiently comprehensive to meet the ordinary demands of justice, than to have one varying with the changing views of the judges or variable standards of moral conduct in different communities, or at different periods, we are unwilling to make any further innovation, but prefer to remit the matter to the only proper tribunal—the lawmaking power of the state."

This principle is also embedded in our Constitution. Section 1 of article 5 of the Constitution of this state provides that "the powers of the government of the State of Utah shall be divided into three distinct departments, the legislative, the executive, and the judicial; and no person charged with the exercise of the powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

There is no provision of the Constitution that either expressly or otherwise directs or permits the courts of this state to denounce and punish as crimes acts and omissions not made punishable by statute; hence to do what we are urged would be in violation of both the letter and the spirit of the constitution.

It is to be regretted that there is no statute in this state making the acts charged in the information punishable as a crime. The legislature can, and no doubt will, when its attention is called to the matter, denounce them as crimes and prescribe proper penalties.

For the reasons herein stated, the judgment is reversed.

STRAUP and FRICK, JJ., concur.