STATE of Utah, Plaintiff and Appellant,

v.

Debra Kay GALLION, Defendant and Respondent.

No. 14966.

Supreme Court of Utah.

Nov. 17, 1977.

---

1. *Wilson v. Family Services*, Utah, 554 P.2d 227 (1976).

Robert B. Hansen, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, Noall T. Wootton, Utah County Atty., Provo, for plaintiff and appellant.

Michael D. Esplin, Provo, for defendant and respondent.

MAUGHAN, Justice:

The state appeals from an order of the district court quashing an information filed against defendant. Defendant was charged with a violation of Section 58–37–8(4) D (a)(iii), U.C.A.1953, as enacted in 1972, that she altered a forged prescription for a Schedule II controlled substance, demerol. Conviction under this section provides the penalty for a felony in the third degree. We affirm.

In Section 58–37–4(3)(b), the substances which were determined by the legislature to be included in Schedule II were set forth. The substance, demerol, does not appear therein. The state asserted in a memorandum to the trial court that the attorney general had added demerol to Schedule II in accordance with the Utah Controlled Substances Act, Title 58, Chapter 37. Specifically the state claimed:

. . . Since the adoption of the Controlled Substance Act, Demerol has been added to the controlled substance list, a true list being in the possession of Dr. Wesley Parish, a chemist, located at 815 West Columbia Lane, Provo, Utah.[1]

The trial court granted the motion to quash on the ground provisions in the Utah Controlled Substances Act under which the attorney general added demerol as a controlled substance were an unconstitutional delegation of legislative power. Section 58–37–8(4) D (a), under which defendant was charged, provides:

It shall be unlawful for any person knowingly and intentionally:

\* \* \* \* \* \*

(iii) To make any false or forged prescription or written order for a controlled substance, or to alter the same or to alter any prescription or written order issued or written pursuant to the terms of this act.

Thus a necessary element of the crime charged is that the proscribed conduct involves a controlled substance. Section 58–37–2(5) provides:

The words 'controlled substance' mean a drug, substance, or immediate precursor in schedules I, II, III, IV, or V of section 58–37–4. . . .

Under the legislative design, one of the consequences of scheduling a substance is the determination of the penalty for the crime, viz., the penalties for acts proscribed under section 58–37–8(1) A and (5) E are more severe for controlled substances in schedules I and II than those in III, IV, and V. Section 58–37–3(2) provides:

The attorney general of the state of Utah shall administer the provisions of this act and may add or delete substances or reschedule all substances enumerated in the schedule in section 58–37–4. . .

Thus power is conferred on the attorney general to define a crime, viz., to proscribe conduct not previously deemed criminal under the Controlled Substances Act, and to designate the penalty therefor by the scheduling of the substance.

Is the grant of power to the attorney general to amend, in effect, the act by adding, deleting or rescheduling a controlled substance unconstitutional? Article V, Section I, Constitution of Utah, provides:

The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these de-

1. Although the defendant specifically asserted the issue that demerol was not proscribed in Schedule II, the state did not proffer any evidence to show compliance with Sec. 58–37–5(3): . . . . "every substance controlled by the attorney general to have effect shall be certified and filed with the office of the secretary of state. The secretary of state shall keep a permanent register of the rules or controls certified."

partments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

The attorney general is a member of the Executive Department, Article VII, Section 1. He is the legal advisor of the State officers, Article VII, Section 18. In *Hansen v. Barlow* [2] this court ruled it is within the right of the attorney general, if not his duty, to bring suits to clarify the constitutionality of laws enacted by the Legislature if he deems it appropriate. Under the Controlled Substances Act, a person charged with the exercise of executive powers, which in the case of the attorney general, includes the duty to challenge the constitutionality of a law, is assigned a function [3] appertaining to the legislative department. The conflict is obvious, the person, who is to be alert to possible constitutional infirmities, is participating in the legislative process by determining an essential element of a crime and the penalty. By this act, the attorney general is consigned to the anomalous position of exercising a potential challenge to a law he has, in fact, amended.

█ If Article V, Section 1, has any purpose it is to prohibit the concentration of legislative and executive powers in *one* person. The adherence to federal case law concerning the delegation of legislative power does not resolve the dilemma of interpreting Article V, Section 1, for there is no comparable provision in the Constitution of the United States.

As pointed out in 1 Davis, Administrative Law Treatise, Section 2.02, p. 79:

> The non-delegation doctrine is wholly judgemade. The Constitution provides merely: 'All legislative Powers herein granted shall be vested in a Congress of the United States . . .' The power

is also granted 'to make all laws which shall be necessary and proper for carrying into Execution the foregoing Powers.' Some congressional powers must obviously be delegated, including the powers 'to . . . collect taxes,' 'to borrow money,' 'to coin money,' and 'to raise and support Armies.' Delegation was not discussed at the Constitutional Convention, except that a motion by Madison that the President be given power 'to execute such other powers . . . as may from time to time be delegated by the national Legislature' was defeated as unnecessary.

Davis points out as palpably unsound the assertion by the Supreme Court in 1911 that "the authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense." [4] Davis contends the assertion that authority as to what the law shall be is not delegable is clearly false, for virtually every statute creating an administrative agency delegates authority to determine what the law shall be. Davis claims that the recent opinions of the Supreme Court have generally been reasonably frank in recognizing that the law making power is delegable. [5] More recently Davis has stated:

> The non-delegation doctrine is almost a complete failure. It has not prevented a delegation of legislative power. Nor has it accomplished its later purpose of assuring that delegated power will be guided by meaningful standards. More importantly, it has failed to provide needed protection against unnecessary and uncontrolled discretionary power. The time has come for the courts to acknowledge that the non-delegation doctrine is unsatisfactory and to invent better ways to

---

2. 23 Utah 2d 47, 456 P.2d 177 (1969).

3. In *State ex rel. Black v. Burch*, 226 Ind. 445, 80 N.E.2d 294, 302 (1948) the court, in interpreting a constitutional provision similar to Article V, Sec. 1, observed that the words "power" and "functions" were interchangeable, but

if there be any distinction the term "functions" would denote a broader field of activities than the word "power."

4. Id. p. 77.

5. Id. p. 78.

protect against arbitrary administrative power.[6]

The delegation doctrine in this jurisdiction is not judge-made law but has a foundation in our state constitution. However, the express language in Article V, Section 1 is addressed specifically to another aspect of the delegation than that developed in the federal case law.

■ In this case the prohibition of section 1, is directed to a "person" charged with the exercise of powers properly belonging to the "executive department." The Constitution further specifies in Article VII, Section 1, the persons of whom the Executive Department shall consist. Thus it is the "persons" specified in Article VII, Section 1, who are charged with the exercise of powers belonging to the Executive Department, who are prohibited from exercising any functions appertaining to the legislative and judicial departments. Since the inhibitions of the Article V, Section 1, are directed toward specific "persons," there is nothing to restrain the legislative department from creating administrative bodies to exercise legislative functions, viz., rule making. Although administrative bodies are nominally designated a part of the executive branch, they do not fall within the Constitutional definition of the Executive Department and the prohibition of Article V, Section 1 does not apply thereto.

■ The intent expressed in Article V, Section 1, was not to proscribe the delegation of legislative power, although under Article VI, Section 1, there are limitations in this regard, but to prevent those, who exercise the power assigned by the Constitution to their department, from aggrandizement of their power, however derived, by exercising functions appertaining to another department.

The purpose of the provision is aptly expressed in Story, on the Constitution (5th Ed.), Section 523, p. 392:

And the Federalist has with equal point and brevity remarked, that 'the accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may be justly pronounced the very definition of tyranny.'

■ In essence, Article V, Section 1 is not directed towards the delegation of legislative power per se but proscribes the conferring of legislative functions on specified persons in the executive department to avert any potentiality for tyranny by concentrating power in these individuals.

■ The other aspect of this case which merits response is whether the Controlled Substances Act has improperly delegated legislative power. The State through the attorney general, contends the statute confers no more than the traditional administrative powers. This court has reiterated the Legislature may:

. . . provide for the execution through administrative agencies of its legislative policy, and may confer upon such administrative officers certain powers and the duty of determining the question of the existence of certain facts upon which the effect or execution of its legislative policy may be dependent.[7]

On the other hand, this court has stated:

The Legislature is not permitted to abdicate or transfer to others the essential legislative function with which it is thus vested. . . . [8]

In *Western Leather and Finding Company*[9] this court observed that the imposition of a tax and the designation of those who must pay the same is such an essential legislative function as may not be transferred to others. In *Tite v. State Tax Com-*

**6.** Davis, Administrative Law Treatise, 1970 Supplement, Sec. 2.00, p. 40.

**7.** *Clayton v. Bennett*, 5 Utah 2d 152, 298 P.2d 531, 535 (1956); *Rowell v. State Board of Agriculture*, 98 Utah 353, 358, 99 P.2d 1 (1940).

**8.** *Western Leather and Finding Co. v. State Tax Commission*, 87 Utah 227, 231, 48 P.2d 526, 528 (1935).

**9.** Note 8, supra.

*mission* [10] this court ruled that giving to the Tax Commission the power to determine in its own judgment the amount of the penalty was a legislative function which could not be delegated. In *State v. Johnson* [11] this court held that under the Constitution, the courts may not denounce and punish as crimes acts and omissions not made punishable by statute, for it is a legislative power to declare acts as crimes and to prescribe proper penalties.

The constitutional standard set forth in *State v. Johnson* is incorporated in the Utah Criminal Code. Section 76–1–105, as enacted in 1973, amended 1974, provides:

> Common law crimes are abolished and no conduct is a crime unless made so by this code, other applicable statute or ordinance.

The Controlled Substances Act, is in conflict with this provision, for under the act, conduct may be made a crime, by an administrative ruling certified by the attorney general and filed in the office of the secretary of state, Section 58–37–5.

Most recently, in *Belt v. Turner* [12] this court stated:

> The power of the legislature to repeal or amend the penalty to be imposed for crime is not a matter of judicial concern. It is part of the sovereign power of the state, and it is the exclusive right of the legislature to change or amend it; . . .

Thus this court has recognized there are certain *essential legislative functions* which cannot be transferred to others.

This issue is reflected in 1 Davis, Administrative Law Treatise, Section 2.02, pp. 80–81:

> Possibly the most helpful early history is a distinction drawn by Chief Justice Marshall: 'It will not be contended that Congress can delegate to the courts or to any other Tribunal, powers which are strictly and exclusively legislative. But

Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself. . . . The line has not been exactly drawn which separates those important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provisions to fill up the details.' If the Supreme Court had consistently followed this lead, the law of the subject might be much more satisfactory.

The state does not cite any case wherein conduct not previously deemed criminal has been so denounced and the penalty set through the administrative process.

The instant case must be distinguished from *United States v. Grimaud,* [13] wherein the court ruled there was not an unconstitutional delegation of legislative power to the Secretary of Agriculture. The secretary was granted power to make rules and regulations covering forest reservations. Congress made it a crime to violate the rules and regulations made by the secretary pursuant to the authority granted in the statute. The secretary made a rule forbidding stock grazing on the forest reservation without a permit. The issue before the court was whether the forest reserve act of 1897 was unconstitutional, insofar as it delegated to the Secretary of Agriculture power to make rules and regulations, and made a violation thereof a penal offense. The court stated:

> . . . The subjects as to which the Secretary can regulate are defined. The lands are set apart as a forest reserve. He is required to make provision to protect them from depredations and from harmful uses. He is authorized 'to regulate the occupancy and use and to preserve the forests from destruction.' A violation of reasonable rules regulating the use and occupancy of the property is

10. 89 Utah 404, 416–417, 57 P.2d 734 (1936).

11. 44 Utah 18, 26, 137 P. 632 (1913).

12. 25 Utah 2d 380, 381, 483 P.2d 425 (1971).

13. 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911).

made a crime, not by the Secretary, but by Congress. The statute, not the Secretary, fixes the penalty.

. . . The Secretary did not exercise the legislative power of declaring the penalty or fixing the punishment for grazing sheep without a permit, but the punishment is imposed by the act itself. . . . [14]

In the Controlled Substances Act, the administrator not only determines that a substance should be controlled, he further schedules the substance, which in effect, declares the magnitude of the penalty and fixes the punishment. The administrator is exercising an essential legislative function which cannot be transferred to him.

A challenge similar to the instant one was made in *Howell v. State*,[15] wherein it was urged that the Mississippi Controlled Substances Act was unconstitutional insofar as it conferred on the State Board of Health authority to schedule or reschedule a controlled substance. The state argued the legislative grant of authority was proper since the Board was given only fact-finding authority to classify dangerous substances and was provided with guidelines for making its determinations. The court observed that the question of the validity of the grant of authority arose because, under the Uniform Controlled Substances Law, the penalties prescribed for violations are inextricably tied to the various schedules. The court said:

. . . . The practical effect of moving a substance from one schedule and placing it in another is to increase or diminish the criminal penalty for violation of the act. It is likewise true that, if substances are added to or deleted from any of the schedules such action makes acts pertaining to the substances so added a crime, and as to substances deleted, abolishes a crime. The result is that the State Board of Health is given the authority to define a crime, and ordain its punishment.

The exclusive authority of the legislature to define crimes and fix the punishment therefor is without question.[16]

The court cited case law from Mississippi, with rulings similar to those cited herein in *Tite v. State Tax Commission*, note 10 supra, and *State v. Johnson*, note 11, supra. The court cited case law from other jurisdictions wherein it has been held the power to define crimes and the punishment therefor is vested in the legislature.

The court held that the authority to define crimes and fix the punishment therefor is vested exclusively in the legislature, and it may not delegate that power either expressly or by implication, but must exercise it under Article 4, Section 33 of the Constitution of Mississippi.[17]

In *United States v. Pastor*[18] the defendant argued that the federal act (Drug Abuse Act, 21 U.S.C. Section 811) granting authority to the attorney general to schedule controlled substances constituted an unconstitutional delegation of legislative authority. Although the court cited *United States v. Grimaud*,[19] it overlooked the qualification set forth, viz., that Congress not the administrator had set the penalty. The court acknowledged the ruling in *Howell v. Mississippi*, but declined to follow it, noting that the anti-delegation doctrine had retained much greater vitality in the state courts than it had in the federal courts.

There are sound reasons for ruling the definition of a crime and the precise punishment therefor to be essential legislative functions, which cannot be transferred. Criminal trials would be unduly complicated, for the defendant would have the right to challenge the administrative procedure and the findings where a substance has been scheduled or rescheduled. A similar

---

14. at pp. 522–523 of 220 U.S., at p. 485 of 31 S.Ct.

15. Miss., 300 So.2d 774 (1974).

16. at pp. 779–780 of 300 So.2d.

17. This provision vests the legislative power in the legislature.

18. 419 F.Supp. 1318 (1976).

19. note 13, supra.

determination by the legislature could not be challenged. The administrative rulings are not statutes and are not incorporated into the code, a person who wishes to abide by the law would have to resort to the permanent register kept by the secretary of state to determine the status of a substance.[20]

There is a certain peril involved if administrative procedures can be applied to the criminal law. Why couldn't an administrator revise the penalties in Section 76–6–412, according to the consumer price index or a determination that there had been an excessive amount of theft of property valued at less than $100. A determination of the elements of a crime and the appropriate punishment therefor are, under our Constitutional system, judgments, which must be made exclusively by the legislature.

WILKINS and HALL, JJ., concur.

CROCKETT, Justice (concurring separately).

I concur in affirming the ruling of the district court that there is no proper foundation for charging the defendant with a crime for possession of "demerol" as a controlled substance. But I have reservations about some aspects of the main opinion and therefore state my own reasons for my conclusion.

It is to be conceded that the legislature cannot delegate legislative powers to executive or administrative officers or departments. However, it is also to be realized that due to the complexities of human society, which are ever increasing, the function of the legislative branch must necessarily be that of a general policy making body and that it cannot spell out all of the details of the administration and application of law. Consequently, it is necessary that the exec-

utive branch (e.g., administrative agencies such as the Public Service Commission, the Industrial Commission and the Tax Commission), in order to carry out the responsibilities imposed upon them, have the power to make rules and regulations that must be complied with, and that failure to comply must have sanctions or penalties, and that they therefore must have the force of law.

Even though the legislature cannot delegate the power to make laws to an executive officer,[1] it may enact laws which take effect upon the ascertainment of certain facts and conditions, and may delegate the duty to determine the existence of such facts to executive or administrative officers.[2] Whether a particular delegation of power is valid depends upon whether the legislature has prescribed sufficient standards or limitations to guide the exercise of that power in accordance with its will.[3]

It is a cardinal principle of due process that a person is entitled to reasonable notice, or a means of knowing, what conduct is prohibited before he can be held criminally responsible for engaging in it.[4] In conformity therewith the procedure for the adoption of such a rule, and the rule itself, must be of such a nature and sufficiently clear and definite that persons of ordinary intelligence who would abide by the law will know how to conform to its requirements.[5]

Consistent with the foregoing, the legislature has authorized the Attorney General to carry out the policy of the Act under appropriate safeguards. U.C.A.1953, sections 58–37–3 through 7 list various factors for the Attorney General to consider in determining whether to control a substance. These include the potential of the substances for abuse, or a history and current pattern of

---

20. Here, apparently one would need to search out a chemist in Provo, Utah.

1. *Young v. Salt Lake City*, 24 Utah 321, 67 P.2d 1066 (1902); *Rowell v. State Board of Agriculture*, 98 Utah 353, 99 P.2d 1 (1940).

2. Id.; 16 C.J.S. Constitutional Law § 138.

3. *Rowell v. State Board of Agriculture, supra* note 1.

4. *State v. Timmons*, 12 Wash.App. 48, 527 P.2d 1399 (1974).

5. *Greaves v. State*, Utah, 528 P.2d 805 (1974); *U. S. v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989.

abuse, whether the substance is controlled under federal law and whether it is an immediate precursor of a substance already controlled under the Act; and the current state of scientific knowledge of the substance and the effects of its use.

In regard to the requirement of notice to the public, Section 58–37–5(3) provides:

> . . . every substance controlled by the attorney general *to have effect* shall be certified and *filed with* the office of *the secretary of state.* The secretary of state shall keep a permanent register of the rules or controls certified. [Emphasis added.]

It should be obvious to anyone reading those statutes, conferring such powers on the Attorney General, that in order to meet the requirements of due process of law, there must be compliance with the requirements, both as to the certification, and the filing in the office of the Secretary of State the statement as to any drug so prohibited, so that there is notice in that public office, where it can be examined by anyone who has an interest therein.

As indicated in the main opinion, the State did not establish that the statutory requirements above referred to had been complied with; and particularly it was not shown that there had been the filing with the Secretary of State; but there was some evidence indicating to the contrary. In view of that failure there is no foundation upon which to conclude that the Attorney General's designation of demerol as a controlled substance provides a valid basis for charging and prosecution for crime. For these reasons I join in affirming the trial court's decision.

ELLETT, Chief Justice (dissenting).

The legislature listed 120 drugs as "controlled substances,"[1] i. e. substances that the Secretary of Health, Education and Welfare or the Attorney General of the United States has found after investigation and by regulation designated as habit form-

ing because of their effect on the central nervous system; or which has a potential for abuse because of their depressant or stimulant effect on the central nervous system; or which has a hallucinogenic effect on the user.

The legislature sought to control the use of all such drugs and thereby protect those of its citizens who might use them to their own damage and harm. It realized that there might be other harmful substances not then known which would be equally dangerous to users and so a provision was inserted into the law[2] that authorized the Attorney General of the State of Utah to add such substances to the list of proscribed drugs.

The authority thus given to the attorney general is not, in my opinion, a delegation of legislative powers. He is strictly limited in his determination as to whether the substance is injurious to the user. The substance must be of one of the classes set out in the statute. Notice of a hearing to determine whether the new drug should be placed on the list is required to be given, and the right to be heard must be afforded to all interested persons. The statute[3] provides that any person who is, or who may be, affected by a designation of any such listed substance has a right to a judicial determination of the validity of the rule or control by filing an action for declaratory relief in the district court of Salt Lake County. The court may also declare the rule invalid for a substantial failure to comply with the provisions of the act relating to the procedure for ascertaining the classification of the new drug.

The pivotal question in this case is, therefore, whether the power of the attorney general to add drugs to the controlled substances schedule is a grant of an unconfined, vagrant power; or whether his function is merely to determine the facts upon which legislative policy depends and to exercise discretion in a narrow area defined by ascertainable standards.

1. U.C.A., as amended, 58–37–4.

2. U.C.A., as amended, 58–37–3.

3. U.C.A., as amended, 58–37–5(b)(7).

The appropriate test to be applied in determining this question was articulated in the concurring opinion of Justice Wolfe in *Revne v. Trade Commission:*[4]

> To require rigid and minutely defined standards or guides where the matters to be regulated are of such a nature as to require flexibility, might prevent needed remedies. Otherwise, the legislature would be required to anticipate all possible situations which might arise and itself supply a rule or guide to fit each such situation, a requirement which might be palpably impossible.
>
> Roughly, the measure of the detail content of standards or guides is what the matter or subject to be regulated will practically admit of. Otherwise, the legislature could not exercise its power to regulate what might acutely need regulation because the diversity and complexity of the regulative problems involved, would not practically admit the setting of sufficiently detailed standards.

This standard was applied by this Court in *Clayton v. Bennett.*[5] In that case, plaintiff attacked the constitutionality of a statute relating to the licensing of architects because, *inter alia,* it was an unlawful delegation of legislative authority. In upholding the statute, this Court noted:

> . . . certain basic qualifications relating to education, age, moral character and the requirement of satisfactorily passing an examination are set forth in the statutes. It seems obvious that the legislature could go no further than to set up such general standards.

To resolve the question of the constitutionality of the statute in this case, all that remains is to determine if the attorney general's power to add drugs to the controlled list is subject to those rules and guides that the legislature could be reasonably expected to provide.

It seems to me that there is no merit to the contention that there exists in the law any denial of equal protection or of any unconstitutional delegation of authority.

I would reverse the judgment of the trial court and remand the case for trial on the merits.

---

**4.** 113 Utah 155, 186, 192 P.2d 563, 579 (1948).

**5.** 5 Utah 2d 152, 156, 298 P.2d 531, 534 (1956).