610 P.2d 190

**Alex MONTOYA, Petitioner-Appellant,**

v.

**The Hon. James M. O'TOOLE, Magistrate Judge of the Bernalillo District, Division II, Respondent-Appellee.**

No. 12577.

Supreme Court of New Mexico.

April 10, 1980.

Rehearing Denied May 15, 1980.

John L. Walker, Albuquerque, for petitioner-appellant.

Jeff Bingaman, Atty. Gen., James L. Blackmer, Asst. Atty. Gen., Jose L. Martinez, Albuquerque, for respondent-appellee.

OPINION

PAYNE, Justice.

Alex Montoya was charged in magistrate court with a violation of the Controlled Substances Act for possession of a controlled substance, diazepam, commonly known as valium.

Montoya filed a motion to dismiss, alleging an unlawful delegation of power under the New Mexico Constitution and a violation of the notice requirement under the due process clause of the United States Constitution. The motion was denied. Montoya then filed a petition for writ of prohibition. The court again found against Montoya who now asks this Court to reverse the district court and to enter a permanent writ of prohibition against the magistrate judge. We affirm.

This appeal raises two issues: (1) whether there has been an unconstitutional delegation of power to the Board of Pharmacy by the Legislature; and (2) whether the procedure followed in classifying drugs by the Board violates the due process notice requirements of the New Mexico and United States Constitutions.

Montoya argues that to allow the Board of Pharmacy to schedule drugs, resulting in the attachment of differing criminal penalties for the possession of scheduled drugs, is an unconstitutional delegation of authority under the New Mexico Constitution, Article III, § 1.[1] We disagree.

---

1. The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted. N.M.Const. Art. III, § 1.

The Legislature may lawfully delegate authority to an administrative agency when that authority is restricted by specific legislative standards. *See City of Albuquerque v. Jones*, 87 N.M. 486, 535 P.2d 1337 (1975); *City of Santa Fe v. Gamble-Skogmo, Inc.*, 73 N.M. 410, 389 P.2d 13 (1964); *Arnold v. Board of Barber Examiners*, 45 N.M. 57, 109 P.2d 779 (1941). This Court said in a case involving a delegation of authority under New Mexico's Bond Act that:

The legislature has declared the policy and established primary standards to which the agencies must conform. *The Authority and other state agencies are delegated only that power necessary to the accomplishment of the purposes of the statute.* Beyond that, it does not delegate *legislative power or confer executive or judicial authority. The legislature has not delegated its authority to make a law but has delegated power to determine facts upon which the law makes its own action depend.* (Emphasis added.)

*State v. New Mexico State Authority*, 76 N.M. 1, 13, 411 P.2d 984, 993 (1966).

Section 30–31–3, N.M.S.A.1978, does not violate the delegation strictures of the New Mexico Constitution. The Legislature has established strict guidelines for the Board of Pharmacy to follow in determining a substance's potential for abuse. The standards for the scheduling of dangerous drugs are clear and the duties of the Board are definite. The statute requires that

the board *shall* consider the following:

(1) the actual or relative abuse of the substance;

(2) the scientific evidence of the pharmacological effect of the substance, if known;

(3) the state of current scientific knowledge regarding the substance;

(4) the history and current pattern of abuse;

(5) the scope, duration and significance of abuse;

(6) the risk to the public health;

(7) the potential of the substance to produce psychic or physiological dependence liability; and

(8) whether the substance is an immediate precursor of a substance already controlled under the Controlled Substances Act. (Emphasis added.)

After evaluating a substance under this provision, the Board of Pharmacy must then determine if it falls within the mandatory provisions of Section 30–31–5, N.M.S.A.1978, which states in part:

A. The board *shall* place a substance in Schedule I if it finds that the substance:

(1) has a high potential for abuse; and

(2) has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision.

B. The board *shall* place a substance in Schedule II if it finds that:

(1) the substance has a high potential for abuse;

(2) the substance has a currently accepted medical use in treatment in the United States or currently accepted medical use with severe restrictions; and

(3) the abuse of the substance may lead to severe psychic or physical dependence.

C. The board *shall* place a substance in Schedule III if it finds that:

(1) the substance has a potential for abuse less than the substances listed in Schedules I and II;

(2) the substance has a currently accepted medical use in treatment in the United States; and

(3) abuse of the substance may lead to moderate or low physical dependence or high psychological dependence.

D. The board *shall* place a substance in Schedule IV if it finds that:

(1) the substance has a low potential for abuse relative to the substances in Schedule III;

(2) the substance has a currently accepted medical use in treatment in the United States; and

(3) abuse of the substance may lead to limited physical dependence or psychological dependence relative to the substance in Schedule III.

E. The board *shall* place a substance in Schedule V if it finds that:

(1) the substance has a currently accepted medical use in treatment in the United States; and

(2) abuse of the substance may lead to limited physical dependence or psychological dependence relative to the substances in Schedule IV. (Emphasis added.)

This legislative scheme for designating and scheduling potentially abused drugs allows the Board of Pharmacy only minimal discretion in its fact-finding function and no discretion in enacting substantive law. The Board's expertise in this field is crucial and its vigilance in dealing with new and dangerous drugs is necessary. It would place an enormous burden upon the Legislature, in time and expense, if it were required to consider each of the thousands of new substances that are marketed each year by pharmaceutical firms. In the final analysis the Legislature would still have to rely on outside expertise to evaluate each substance. Here the Legislature established strict statutory standards and directed the Board to apply them in categorizing substances.

The Supreme Court of Tennessee, in a case similar to this one, viewed the administrative and legislative tensions raised by such a circumstance in this way:

At the outset, it should be noted that the area of drug control is one in which some form of delegation by the legislature of discretionary authority to an agency is peculiarly necessary. To be effective, a drug control program must be reviewed continuously, and adjusted when necessary, in the light both of new drugs coming on to the market, and of new knowledge concerning old drugs. The legislature, by its nature, has neither the facilities nor the expertise to assume this task. Furthermore, because the legislature is not in continuous session, it cannot give the drug control program constant attention, the lack of which could result in a dangerous drug being widely disseminated throughout the state before effective controls were instituted. (Citations omitted.)

*State v. Edwards,* 572 S.W.2d 917, 919 (Tenn.1978).

This Court has applied a restrictive approach to the delegation doctrine in some cases. *State v. Heffernan,* 41 N.M. 219, 67 P.2d 240 (1936); *State v. Roy,* 40 N.M. 397, 60 P.2d 646 (1936). In this case, however, we hold that the Legislature has not abrogated its responsibilities, but has defined and confined the role of the Board of Pharmacy to that of fact-finder.

■ Montoya also argues that prosecuting him under this complaint violates the fair notice requirements of the state and federal due process clauses. He complains that there is no notice provision to alert a person that a drug has been added by the Pharmacy Board and contends that this voids the statute. He relies upon the language of the United States Supreme Court in *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939), for the position that the terms of a penal statute creating a new offense should not forbid or require "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ."

We hold that the notice procedure of the Pharmacy Board does not violate due process. Although drugs, when scheduled, are not added to those initially listed and published under the Controlled Substances Act, a reasonable person reading Sections 30–31–3 and 30–31–5 would see that he also needs to read the regulations of the Pharmacy Board to obtain a complete list of scheduled drugs. The Act provides an additional safeguard by requiring notice and a

public hearing before the adoption of a regulation, followed by a thirty-day time period before the regulation becomes effective. § 61–1–29, N.M.S.A.1978. This satisfies the due process notice requirements of the state and federal constitutions.

We affirm.

IT IS SO ORDERED.

SOSA, C. J., and FEDERICI, J., concur.